PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name  _Smiley_  _Derran_  _DS_
　　　　(Last)　　　　　　　(First)　　　　　　(Initial)

Prisoner Number _F-28162_

Institutional Address _P.O. Box 1050 Soledad CA 93960-1050_

═══════════════════════════════════════════════════

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

_Derran Smiley_
Full Name of Petitioner

Case No.(To be provided by the clerk of court)

**RMW**

vs.

_Warden, Mr. Mike Evans_
Name of Respondent
(Warden or jailor)

PETITION FOR A WRIT OF HABEAS CO **(PR)**

═══════════════════════════════════════════════════

Read Comments Carefully Before Filling In

When and Where to File

　　You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

　　If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your

petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

<u>Who to Name as Respondent</u>

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

## A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1.  ' What sentence are you challenging in this petition?

(a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

_Alameda County Superior Court_     _Oakland_
Court                                          Location

(b)  Case number, if known _149560_
(c)  Date and terms of sentence _5/16/06  49 year to life_
(d)  Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) Yes _✓_ No __

Where? _Salinas Valley State Prison_     _P.O Box 1050 Soledad CA 93960_
(Name of Institution)                              (Address)

2.  For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

_209 (b)(1), 261 and 667.61 (d)(2)_

_____

_____

3.  Did you have any of the following?

Arraignment: Yes _✓_ No __   Preliminary Hearing: Yes _✓_ No ___ Motion to Suppress: Yes _✓_ No __

4.   How did you plead?

Guilty _____   Not Guilty __✓__   Nolo Contendere _____

Any other plea (specify) _____

5.   If you went to trial, what kind of trial did you have?

Jury __✓__   Judge alone _____   Judge alone on a transcript _____

6.   Did you testify at your trial?   Yes __✓__ No __

7.   Did you have an attorney at the following proceedings:

(a)   Arraignment   Yes __✓__      No __
(b)   Preliminary hearing      Yes __✓__      No __
(c)   Time of plea   Yes __✓__      No __
(d)   Trial   Yes __✓__      No __
(e)   Sentencing   Yes __✓__      No __
(f)   Appeal      Yes __✓__      No __
(g)   Other post-conviction proceeding   Yes __      No __

8.   Did you appeal your conviction?   Yes __✓__ No __

(a)   If you did, to what court(s) did you appeal?

| | | | | |
|---|---|---|---|---|
| Court of Appeal | Yes __✓__ | No __ | __07__ (Year) | *Affirm, Exhibit. 1.* (Result) |
| Supreme Court of California | Yes __✓__ | No __ | __07__ (Year) | *Denied Review, Exhibit 2.* (Result) |
| Any other court | Yes __ | No __✓__ | _____ (Year) | _____ (Result) |

(b)   If you appealed, were the grounds the same as those that you are raising in this petition?
Yes __✓__ No __

(c)   Was there an opinion?   Yes __✓__ No __

(d)   Did you seek permission to file a late appeal under Rule 31(a)?
Yes __      No __✓__

4

If you did, give the name of the court and the result:

9.    Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?    Yes ___    No ✓

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

(a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.    Name of Court _Court of Appeal_

Type of Proceeding _Habeas Corpus_

Grounds raised (Be brief but specific):

a. _Denied assistance of counsel at trial by failure to object to_

b. _rape trauma syndrome evidence as substantive evidence of guilt._

c. _____

d. _____

Result _Denied_                    Date of Result _2/21/07_

II.    Name of Court _____

Type of Proceeding _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result _____    Date of Result _____

III.    Name of Court _____

Type of Proceeding _____

Grounds raised (Be brief but specific):

a.  _____

b.  _____

c.  _____

d.  _____

Result _____ Date of Result _____

     (b)    Is any petition, appeal or other post-conviction proceeding now pending in any

court?    Yes __ No __

_____

(Name and location of court)

## B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you need more space. Answer the same questions for each claim.

Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. § 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

Claim One: _Insufficient evidence to support the kidnap conviction and true finding on the kidnap enhancement allegations_

7

under code 667.61(b)(2) and was deprived of due process.

Supporting Facts: Here, no weapon was used, (In re Early (1975) 14 Cal. 3d 122, 131). The evidence did not show that the victim was in public view. The night was dark, and there was no evidence that any other people were around before appellant and the victim went to the park. see People V. Martinez (1999) 20 Cal. 4th 225, 237; People V. Stenworth (1974) 11 Cal. 3d 588, 598; Jackson V. Virginia (1974) 443 US 307, 319.

Claim Two: Petitioner was denied due process and a fair trial when uncharged conduct evidence was admitted against him pursuant to evidence code 1108.

Supporting Facts: The prosecution introduced propensity evidence of uncharged offense and the court allowed the jury to convict upon such evidence. Mc Kinney V. Rees (9th Cir. 1993) 993 F. 2d 1378, 1380-1385) Crotts V. Smith (9th Cir 1996) 73 F. 3d 861, 866; United States V. Bradley 9th Cir. 1993) 5 F. 3d 1317, 1321.)

Claim Three: Caljic no. 2.62 violates appellants 5th amendment right against self-incrimination.

Supporting Facts: This instruction pattern allows the jury to draw an unfavorable inference if the defendant fails to explain or deny inculpatory evidence where it is within his power to do so. (United States V. Dow (7th Cir. 1972) 457 F. 2d 246, 250); Griffin V. California (1965) 380 U.S 609.); Fahy V. Connecticut (1963) 375 U.S. 85, 86-87.) Chapman V. California supra 386, U.S p. 24

If any of these grounds was not previously presented to any other court, state briefly which

grounds were not presented and why:

_____

_____

_____

Claim. 4. Caljic No. 2.50.01 deprived him of due process by mistating the burden of proof necessary for conviction with No 2.50.1

Supporting Facts:

The instruction permitted the jury to infer from his commission of these prior crimes that he had a disposition to commit such crimes, and to infer from such disposition that he did commit the charged crimes without necessarily being convinced beyond a reasonable doubt that he committed the charged crimes. (In re Winship (1970) 397 U.S. 358, 364; see Gibson V. Ortiz (9th Cir. 2004) 387 F.3d 812, 823-824; Sullivan V. Louisiana (1993) 508 U.S. 275, 280; Yates V. Evatt (1991) 500 U.S. 39, 404-405 14th amendment U.S. Constitution

The problem, however, is that the instructions complained of here specifically told the jury how to evaluate and use the prior sexual offense evidence. It clearly was not harmless beyond any reasonable doubt. The 2002 revision still contains offending language dealing with propensity evidence (i.e., likely to commit and did commit the crimes of which he is accused). This newly added cautionary language was not sufficient to remove the instruction out of the realm of unconstitutionality. The instruction told appellants jury that could find that a person who had committed a prior sexual offense is likely (that is, more likely than not) to have commit the charge offense.

Claim 5.  Appellant was denied due process and his 6th amendment right to the effective assistance of counsel by counsel's failure to object to the use of rape trauma syndrome evidence as substantive evidence of guilt.

Supporting Facts:

Here, the prosecutor stated hypothetical facts which mirrored the specific facts of this case. The questions were improperly tailored to prove that rape had actually occurred.

People V. Bledsoe (1984) 36 Cal. 3d 236, 251

People V. Roscoe (1985) 168 Cal. App. 3d 1093, 1100

V. Senkowski (2th Cir. 2003) 324 F. 3d 110, 131)

People V. Jeff (1988) 204 Cal. App. 3d 309, 331-332

These questions was very long-winded and minutely detailed to precisely reflect the factual scenario advocated by the prosecution i.e, the victims testimony, Defense counsel remained mute through out the entire ordeal and simply acceded to the prosecutors misconduct. The expert testimony improperly invaded the province of the jury.

Claim 6.   Evidence code 1108 violates due process of law on its face and in this case.


Supporting Facts:

Section 1108 authorizes admission into evidence of prior sex crimes to prove criminal propensity to commit such acts. However, admission of prior bad acts solely to show criminal propensity is violative of federal due process standards. The 5th amendment to the U.S. Constitution prohibits state procedures which offend the principles of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. (Snyder V. Massachusetts (1933) 291 U.S. 97, 105; Speiser V. Randall (1958) 357 U.S. 513, 523; Reno V. Flores (1993) 507 U.S. 292; In re Winship (1970) 397 U.S. 358, 362.); Mc Kinney V. Rees (9th Cir. 1993) 993 F. 2d 1378, 1380-1385.)

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases: *Eze V. Senkowski (2ᵀᴴ Cir, 2003) 321 F. 3d 110, 131*

Jackson V. Virginia (1979) 443 U.S 307, 319; People V. Stanworth (1974) 11 Cal. 3d 588, 598
Mckinney V. Rees (9ᵀᴴ Cir (1993) 993 F. 2d 1378, 1380-1385.; Crotts V. Smith (9ᵀᴴ Cir. 1996) 73 F. 3d 861, 866
Gibson V. Ortiz (9ᵀᴴ Cir 2004) 387 F. 3d 812, 823-824; United States V. Dow (9ᵀᴴ Cir 1972) 457 F. 2d 246, 250.

Do you have an attorney for this petition?    Yes ___ No ✓

If you do, give the name and address of your attorney:

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on _____    *Derran Smiley*_____
                   Date                              Signature of Petitioner

( rev. 5/96)

9

# Exhibit

ONE

COPY

Filed 9/19/07

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE



FILED

SEP 1 9 2007

C........ ....  ......., Dist.
DIANA HERBERT
By_____

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DERRAN SMILEY,<br><br>    Defendant and Appellant. | A113874<br><br>(Alameda County<br>Super. Ct. No. C149560) |

A jury convicted defendant Derran Smiley of kidnapping to commit rape and five counts of forcible rape (Pen. Code, §§ 209, subd. (b)(1); 261, subd. (a)(2)), all involving victim Chanelle Doe. The trial court sentenced defendant to 25 years to life, consecutive to a determinate term of 24 years. Defendant challenges the sufficiency of the evidence to support the aggravated kidnapping conviction, and raises several other contentions including improper admission of prior sexual offenses, instructional error, and ineffective counsel. We reject defendant's contentions and affirm.

### I. FACTS

Under applicable standards of appellate review, we must view the facts in the light most favorable to the judgment of conviction, and presume in support of the judgment the existence of every fact which the jury could reasonably find from the evidence. (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Neufer* (1994) 30 Cal.App.4th 244, 247.)

1

*Facts of the Instant Offense*

Defendant was charged with the aggravated kidnapping in count 1, and with five counts of rape in counts 2 through 6. We identify the conduct that underlies each of the five different rape counts by using the prosecutor's conduct identification in closing argument.

Chanelle was 20 years old when she testified at defendant's trial in early March 2006. On the evening of December 13, 2004, she had dinner at a friend's house. She left the house at approximately 12:45 a.m. on December 14, and boarded a bus to take her to her cousin Tiffany's house on East 16th Street in Oakland.

A few minutes later a man she identified as defendant boarded the bus.[1] Defendant was wearing blue jeans, a black shirt with white lettering on it, and a black jacket. Although there were many empty seats, defendant sat down next to Chanelle and started to talk to her. She knew defendant, Derran Smiley, and his twin brother, Terran Smiley, from when she worked at a mall. She considered them only acquaintances, not friends. She had never dated or socialized with defendant.

Chanelle got off the bus at East 14th Street and Fruitvale. Defendant got off with her, and followed her as she walked up Fruitvale to East 16th Street. As she reached East 16th, Chanelle turned and told defendant she was "going home now," hoping he would stop following her.

As she turned back and started to walk to her cousin's house, defendant grabbed her around the neck from behind in a headlock. She pushed him away, but he grabbed her neck again and held her so tightly she could barely breathe. Holding her in a headlock, defendant dragged Chanelle 222 feet down the street to the entrance to a park.[2]

---

[1] The parties stipulated that Chanelle used her bus pass to board the bus at 1:02 a.m., and defendant used his bus pass to board the bus at 1:11 a.m.

[2] Chanelle testified that the distance was about 50 or 55 feet. A District Attorney investigator measured the distance as 222 feet.

At the park entrance, defendant grabbed Chanelle by the arm and forced her to move 330 feet toward the rear of the park, stopping at a play structure.[3] It was dark, and trees and rows of fences, covered with ivy or barbed wire, were between the rear of the park and the backyards of adjacent houses.

At the play structure, defendant forced Chanelle to the ground and ordered her to remove her clothes. She said she needed to stand to remove her pants. Defendant let her up. She screamed for help and tried to run away. Defendant struck her in the back. She twisted her ankle and fell.

Defendant pinned Chanelle to the ground with his knees on her shoulders, hit her in the face two or three times, and started choking her. Defendant again told her to take off her clothes. She could remove one pant leg, but not the other because of her sore ankle. Defendant removed the other pant leg and Chanelle's underwear.

Defendant raped Chanelle for 20 minutes, and then ejaculated. This rape is count 2. Defendant picked up Chanelle and moved her closer to the play structure, where she sat on the ground. Defendant smoked a cigar and talked in a "rambling" manner for 15 or 20 minutes. Chanelle was "in shock."

Defendant ordered Chanelle to lie on the ground. He began to rape her a second time while she was on her back. She said her leg hurt, so defendant had her turn on her side and place her leg on the play structure. Defendant then penetrated her from behind. She said her leg still hurt, so defendant had her lie on her stomach. He again penetrated her from behind. She again complained about her leg, so defendant turned her over on her back. He raped her again, and ejaculated. Defendant then told Chanelle to urinate. He gave her several tissues to wipe herself, and told her to throw them on the ground. Although it involved four penetrations, the prosecutor charged this incident as one rape count, count 3.

---

[3] Chanelle testified that the distance was about 50 or 55 feet. The District Attorney investigator measured the distance as 330 feet.

Defendant resumed smoking his cigar and talked with Chanelle for about 20 minutes while she sat on the ground. She did not try to run away because her leg was swollen and she could see no avenue of escape.

Defendant told Chanelle to lie down again. She asked him, "How many times are you going to do this to me?" He replied, "Again and again and again." He then started raping her again. This rape is count 4. Chanelle complained that she was cold. Defendant told her to "Suck it up" or to "Take one for the team." Defendant stopped the rape to put his jacket over her because she was shivering, and then resumed raping her. He ejaculated after about 30 minutes. This rape is count 5.

Defendant talked to Chanelle for another 30 minutes, then again told her to lie down. He raped her again, ejaculating after 15 or 20 minutes. This rape is count 6.

Defendant told Chanelle to get dressed. He helped her walk to East 16th Street and Fruitvale. Defendant asked Chanelle for her phone number. She refused. He said, "Oh, you are never going to speak to me again." She thought, "This man has some serious issues." She turned to look toward her cousin's house. When she turned back, defendant was gone.

Defendant was apprehended by Chanelle's father and another man in the early morning hours of December 14. Police officers were summoned and took defendant into custody. Defendant was wearing a black shirt with white writing on it, and appeared very nervous. He was accused of committing a rape and did not deny it.

Chanelle was taken to Highland Hospital where she identified defendant, who had been brought to the hospital, as the man who raped her. At 7:30 a.m. on December 14, physician's assistant Joshua Luftig, an expert in sexual assault examinations, performed a sexual assault examination of Chanelle. She had two abrasions on her neck and her left ankle was swollen. Later the tibia bone in her lower leg was determined to have been fractured. She had semen secretions on her thigh, and moist secretions on her cervix and in her vaginal pool. She had tenderness of the posterior fourchette, a common injury in sexual assaults.

Chanelle told Luftig she had been raped between 1:30 and 4:30 a.m. that morning, and that the rapist choked, hit, pinned her to the ground, and threatened her.[4] Luftig testified that, in his expert opinion, the results of his examination were consistent with Chanelle's report of sexual assault.

Swabs and blood samples were collected from defendant for DNA testing. Shannon Cavness, a DNA analyst for the Oakland Police crime lab, compared the swabs taken from defendant to those taken during the sexual assault examination of Chanelle. Cavness found semen from a single male donor on the swab taken from Chanelle's vagina. The DNA profile of that donor was the same as defendant's DNA profile, which is found in the population less than one in 1.56 quadrillion times. But identical twins (such as defendant and his brother) have the same DNA profile.

A nonsemen sample from a swab taken from Chanelle showed a mixture of her DNA profile and defendant's. Semen found on a paper towel at the crime scene contained a mixture of defendant's and Chanelle's DNA profile. A swab from defendant's penis also showed a mixture of his DNA profile and Chanelle's.

On September 14, 2005, Cavness ran defendant's DNA profile through the Local DNA Index System and got a "cold hit" to a case involving Minako Doe—one of the two victims of the prior sexual offenses which were admitted at defendant's trial. Cavness did not get a hit to defendant's twin brother, Terran, which meant that Terran was not in the system.

### Facts of the Prior Sexual Offenses

**Victim Minako Doe.** Minako testified that in June 2001 she was 23 years old and lived at 34th Street and Telegraph Avenue in Oakland. On June 15 she took BART home from her job in San Francisco. At approximately 11:00 p.m. she was walking from the BART station to her home and decided to stop at a liquor store. There she met a tall Black man named Hakim, who introduced Minako to defendant as his cousin Derran.

---

[4] Luftig testified that Chanelle told him she wasn't sure which twin had raped her, Derran or Terran. But she positively identified defendant in court as her rapist, and identified him at the hospital.

Minako positively identified defendant in court as the man she met that night named Derran.

Minako left the store to walk home. The two men followed. She spoke to them briefly. Defendant suggested they go to the park to drink the beverages they recently purchased. Minako wanted to drink where it was well-lit, but defendant wanted to get away from the street. Hakim told Minako that defendant was "okay," so she agreed to go with the two men into the park.

The three drank beer for 20 to 30 minutes. Minako said she needed to use a restroom and started to walk back to the liquor store. Defendant said he would go with her. Hakim started to accompany them, but stayed behind after defendant spoke to him. Defendant walked toward some bushes in another direction than the liquor store. Minako resisted, and he started to pull her toward the bushes.

Defendant suggested that Minako urinate by the corner of a building in the park. She agreed on the condition that defendant not watch. When she saw that he was watching, she tried to walk away. He grabbed her and started punching her in the face. Minako offered defendant all her money, and gave him the $300 she was carrying because she just got paid. Defendant wanted more money than Minako had, and punched her again.

Defendant stood behind Minako and started choking her with his arm around her neck. He told her to take off her pants. She complied because she couldn't breathe and thought she was going to die. Defendant raped her. Defendant then punched Minako several times in the face and head and demanded more money. Minako said she had no more. Hakim arrived, and defendant asked him, "What do you want to do with this bitch?" Hakim did not reply. Defendant kicked Minako in the face and ran away.

On June 16, 2001, Minako had a sexual assault examination at Highland Hospital. The DNA profile of semen found in her vagina was entered into the Combined DNA Index System (CODIS). On April 27, 2005, the DNA profile was matched to defendant's DNA profile in a "cold hit." A newer sample from defendant confirmed the match.

Luftig, the physician's assistant, reviewed the report of Minako's sexual assault examination. He testified that Minako reported that she was hit in the face and head and was choked. Luftig further testified that the report showed that the physician assistant who conducted the examination, who was not Luftig, concluded that the physical findings of the examination were consistent with Minako's report of a sexual assault.

Police recovered a beer bottle and a wine bottle from the area of the park where Minako had been drinking with Hakim and defendant. Four of defendant's fingerprints were on the beer bottle. While the DNA profiles of identical twins are the same, fingerprints are not. Defendant's and Terran's fingerprints are "totally different."

**Victim Michelea Doe.** Michelea was 15 at the time of defendant's trial. She testified that she was eight years old in 1998, and lived with her aunt and grandmother near the corner of 64th Street and Bancroft in Oakland. Defendant and his twin brother Terran lived in an apartment upstairs. Michelea could tell the twins apart because defendant was shorter than Terran and had more facial hair.

In May of 1998 the twins invited Michelea up to their apartment to play video games. Defendant took her to the bathroom in the back of the apartment, and forced her to orally copulate him. He threatened to hurt her if she did not copulate him. When he ejaculated, eight-year-old Michelea spit defendant's semen into the toilet. He threatened to hurt her and her family if she told anyone what happened.

Later that month, defendant pushed Michelea off her bicycle while she rode in a park, took her behind a tree, and sodomized her. On another occasion he went to her house, raped her, and forced her to orally copulate him. During that same time frame, Terran raped, sodomized, and orally copulated Michelea.

As part of a police investigation into the sex offenses, Michelea gave a videotaped statement to a female police officer. The videotape was played for the jury. There were certain inconsistencies between the videotaped statement of eight-year-old Michelea and her testimony as a 15-year-old at trial. We need not discuss these in detail, in light of the substantial evidence standard and our disposition of the appellate contention regarding admission of the prior sexual offenses. It suffices to say that Michelea testified it was

7

defendant, not Terran, who sodomized her in the park, contrary to her statement on the tape. She affirmed that her statements on the tape about defendant's threats against her and her family were true.

On June 3, 1998, a detective interviewed defendant, who was then 15 years old. The tape of this interview was played for the jury. Defendant told the detective that Michelea was in his apartment, along with Terran and other neighborhood children, on May 23, 1998, but it was Michelea who initiated sexual contact. He denied forcing Michelea to do anything against her will, and stated that their sex acts were consensual. He also denied threatening Michelea.

After further investigation, defendant and Terran were arrested six months later for sex offenses involving Michelea. As part of a plea agreement in juvenile court, defendant and Terran were committed to a group home for eleven and a half months.

*Defense Case*

Defendant testified. We summarize his testimony as follows without repeating qualifiers such as "defendant testified."

Defendant was taller, not shorter, than Terran.

Defendant was born in 1983. When he was 11 or 12 years old, he admitted stealing a car and served three months in Juvenile Hall.

In 1998, defendant had known Michelea for about three years. He admitted making a statement to the detective in June 1998, but denied sexually assaulting Michelea. He specifically denied sodomizing her in the park and forcing her to orally copulate him. He accepted blame for the charged offenses involving Michelea so his brother Terran, who was also charged, would receive more lenient treatment. Terran later admitted to defendant that he committed sexual acts against another young girl, and defendant concluded Terran had also been molesting Michelea.

Also in 1998, defendant met Chanelle. He was 14 and she was probably about 12. They spoke on the phone a few times, and saw each other at the mall where Chanelle worked. In 2001, they began to see each other on a regular basis. He was 18 and she was 16. Defendant referred to Chanelle as his "sex partner." Before December 2004, they

8

had sex about 10 to 12 times. The last two times were in early September 2004 and a few months later, on Thanksgiving.

At about 12:30 a.m. on the morning of December 14, 2004, defendant met Chanelle on the bus by prearrangement. Chanelle had called him earlier and told him to meet her on the bus. They spoke, and got off of the bus together at Fruitvale. They saw some friends at the bus stop, and talked and smoked marijuana with them for an hour and a half.

Defendant and Chanelle then walked to a liquor store, which was closed. They walked to a Quik Stop, where defendant bought a cigar for himself and a drink for Chanelle. They walked back to Fruitvale, smoking marijuana. At a bus stop in front of a park, Chanelle said she wanted to sit down because she had twisted her ankle earlier that day. They sat on the bench while defendant smoked a cigar. Chanelle suggested that they walk around the park. Chanelle was limping slightly.

They walked to the play structure at the rear of the park, sat on a bench, and talked for 15 or 20 minutes. Defendant finished his cigar and asked Chanelle if she wanted to leave. He gave her his jacket because it was cold. Chanelle placed the jacket on the ground, sat on it, and removed her pants. Defendant lowered his. They had sexual intercourse for close to an hour, until defendant ejaculated. She said she had to urinate, so defendant handed her some tissues. She needed assistance because by now her ankle had swollen.

They sat on a bench and talked about where they were going to go. Chanelle wanted to go to the motel room defendant shared with Terran, but defendant said his brother wouldn't like it if Chanelle came to their room at that hour. Chanelle became upset. Defendant walked her part of the way to her cousin's house, and then she said she could make it the rest of the way by herself. Chanelle was acting a "little bit" angry, and acting "kind of funny. Kind of high style." As she walked on her own to her house, defendant walked away. As we noted above, defendant was soon apprehended by Chanelle's father and taken into police custody.

9

Defendant believed that Chanelle accused him of rape because she was "mad" because he would not take her to his motel room after they had sex in the park. He denied hitting her, choking her, or forcing her to the ground. He did not know the source of the abrasions on her neck. He said that Chanelle lied in her testimony. He also claimed that other prosecution witnesses were lying. He believed that Michelea was "coerced" and the District Attorney's office was "out there to get me." He denied sexually assaulting Michelea.

Defendant admitted he was a convicted criminal who had lied to police on previous occasions. But he was "telling the truth" about the incident involving Chanelle.

### Verdict and Sentence

The jury convicted defendant of kidnapping to commit rape and five counts of forcible rape (Pen. Code, §§ 209, subd. (b)(1); 261, subd. (a)(2)).[5] The jury also found true special allegations attached to the five rape counts that (A) defendant kidnapped the victim and that the movement substantially increased the risk of harm to the victim over and above the level of risk inherent in the offense (§ 667.61, subd. (d)(2)) (section 667.61(d)(2)); and (B) defendant committed the rapes against the same victim on separate occasions (§ 667.6, subd. (d)) (section 667.6(d)).

The trial court sentenced defendant to an indeterminate term of 25 years to life on the first forcible rape, count 2. The court sentenced defendant to life in prison on the aggravated kidnapping conviction, count 1, but stayed that sentence under section 654. The court sentenced defendant to consecutive determinate terms of six years on each of the remaining rape counts, counts 3 through 6, for a total consecutive determinate term of 24 years.

## II. DISCUSSION

Defendant raises eight contentions on appeal. We reject his contentions and affirm for the following reasons.

---

[5] Subsequent statutory references are to the Penal Code unless otherwise indicated.

1. Defendant contends there is insufficient evidence to support the aggravated kidnapping conviction, because there is insufficient evidence to show that his movement of the victim was more than incidental to the commission of the five rapes.

The standard of review of the sufficiency of the evidence to support a conviction is well known. (See *People v. Mincey* (1992) 2 Cal.4th 408, 432.) The sole function of the appellate court is to consider the evidence in the light most favorable to the judgment, presume in support of the judgment every fact that can be reasonably deduced from the evidence, and "determine . . . whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt." (*Ibid.*; see *People v. Jones* (1990) 51 Cal.3d 294, 314.) The evidence must be "reasonable, credible, and of solid value." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

"[W]hether the victim's forced movement was merely incidental to the rape is necessarily connected to whether it substantially increased the risk to the victim." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152.) "The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement. [Citation.]" (*Ibid.*) The distance the defendant moved the victim is only one factor for the jury to consider. The jury must consider the distance "in context, including the nature of the crime and its environment." (*Ibid.*) The jury must view the movement in the context of whether it decreased the likelihood of detection, made it more difficult for the victim to escape, or made it more possible for the defendant to commit additional offenses. (*Ibid.*) Furthermore, there is no minimum number of feet a defendant must move the victim to be guilty of aggravated kidnapping. (*People v. Martinez* (1999) 20 Cal.4th 225, 233; *People v. Shadden* (2001) 93 Cal.App.4th 164, 168 [nine feet sufficient] (*Shadden*).)

Movement is more than merely incidental, and thus sufficient for aggravated kidnapping, if the movement increases the harm to the victim by relocating her from a public place to a private one. In *Shadden*, the defendant moved the victim from the front of a store to the rear room. (*Shadden, supra,* 93 Cal.App.4th at pp. 168-169.) In *People*

*v. Diaz* (2000) 78 Cal.App.4th 243, 248-249, the defendant moved the victim from a public sidewalk into a darkened park.

Here defendant moved Chanelle 222 feet from where he initially accosted her to the entrance of the park, and then another 330 feet to the rear of the park. It was dark and there were trees and ivy-covered fences that blocked the view of the rape scene from adjacent houses. The movement was more than substantial and the movement of several hundred feet to the rear of a darkened park clearly decreased the chance of detection and diminished the chance of Chanelle escaping to the street. The above cases, especially *Diaz*, control and support our conclusion that the evidence is sufficient for aggravated kidnapping.

But defendant argues that all sex crimes "are committed in comparative seclusion," making the movement of the victim from a public place to a private one "incidental to the commission of the crime." He contends that "it is inherent" in a sex offense "that some movement to ensure a place and period of privacy is incidental to the commission of the crime." This argument finds no support in law or the logic of this case, and is inconsistent with the rules of law we have discussed above.

There is substantial evidence to support defendant's conviction for aggravated kidnapping.[6]

2. Defendant contends the trial court deprived him of due process and a fair trial by admitting the evidence of prior sexual offenses involving Minako Doe and Michelea Doe. He contends the evidence was inadmissible character evidence under Evidence Code section 1101 (section 1101) and was not properly admitted as propensity evidence under Evidence Code section 1108 (section 1108). We need not reach the section 1101 contention because the trial court properly admitted the evidence under section 1108.

Section 1108 allows the admission of evidence of prior sexual offenses to prove the defendant's criminal propensity to commit such crimes. (See *People v. Falsetta*

---

[6] Defendant also challenges the sufficiency of the evidence to support the section 667.61(d)(2) enhancements. We reject this contention, and find the evidence sufficient, for the reasons set forth above.

(1999) 21 Cal.4th 903, 910-912 (*Falsetta*).) Defendant contends section 1108 is unconstitutional because it violates due process of law. Our Supreme Court has considered and rejected this contention. (*Falsetta, supra,* at pp. 912-922.)[7]

Defendant also contends that section 1108 is unconstitutional because it violates equal protection. At least two courts have rejected this contention. (*People v. Waples* (2000) 79 Cal.App.4th 1389, 1394-1395; *People v. Fitch* (1997) 55 Cal.App.4th 172, 177-185.) We agree with these decisions and likewise reject the contention.

Finally, defendant contends the evidence was more prejudicial than probative and should not have been admitted under Evidence Code section 352 (section 352). We disagree and find no abuse of discretion by the trial judge.

**Minako Doe.** Defendant acknowledges the DNA "cold hit" linking him to Minako's rape. But he argues that because his twin brother Terran has an identical DNA profile, any DNA identification of defendant as the perpetrator would be "at best, a 50-50 proposition." Defendant thus concludes that the evidence against him is equally balanced, and the requisite preponderance of the evidence in support of the prior sexual offense is absent as a matter of law.

This argument is without merit. Defendant ignores the presence of his unique fingerprints on the beer bottle found at the rape scene. He also ignores Minako's in-court identification of him as the rapist. The requisite preponderance of the evidence is present.

Defendant also contends the evidence should not have been admitted because he was never convicted of raping Minako. But a conviction is not necessary for admission of evidence under section 1108, and the absence of a conviction is only one factor in the trial court's "careful weighing process" of assessing probity versus prejudice. (See *Falsetta, supra,* 21 Cal.4th at p. 917.)

There was no abuse of discretion in admitting the evidence involving Minako Doe.

---

[7] Defendant acknowledges as much, but states he is raising the issue to preserve it "in the event of further post-conviction review. . . ."

13

**Michelea Doe.** Defendant devotes only two paragraphs in his opening brief to his contention that the evidence involving Michelea Doe should not have been admitted.

Defendant contends that the incident was remote in time, occurred when he was "extremely young" (15), and was inflammatory in that in involved a young child. But these are only some of the factors which go into the trial court's discretionary weighing process. (See *Falsetta, supra,* 21 Cal.4th at p. 917.) We see no abuse of discretion.

Defendant also argues that his juvenile court record should not have been used against him because after the 1998 group home placement he "was honorably discharged from control by the Youthful Offender Parole Board." Such a discharge could free him of certain penalties and disabilities of his juvenile record under Welfare and Institutions Code section 1772. (See, e.g., *People v. Jackson* (1986) 177 Cal.App.3d 708, 711-712 [statute precludes use of juvenile record for impeachment].)

The Attorney General, however, maintains in his respondent's brief that the record does not show that defendant received such a discharge. Defendant does not dispute this point in his reply brief. The probation report indicates that defendant's "overall juvenile probation performance [w]as poor."

Thus, this appears to be a nonissue. In any event, any error would be harmless given the overwhelming evidence of defendant's guilt.

**3.** The trial court instructed the jury with the 2002 revision of CALJIC No. 2.50.01, which reads in pertinent part:

"If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the sexual offense or offenses of which he is accused.

"However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense or offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for

14

you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crimes."

Defendant contends that CALJIC No. 2.50.01 allowed the jury to (1) find by a preponderance of the evidence that he committed the prior sexual offenses; (2) infer from his commission of the prior offenses that he had a disposition to commit sexual offenses; and (3) infer from that disposition that he "did commit" the charged offenses without determining beyond a reasonable doubt that did commit the charged offenses.[8]

Our Supreme Court considered and rejected a similar argument in *People v. Reliford* (2003) 29 Cal.4th 1007, 1012-1014, 1016 (*Reliford*). The court found no confusion regarding burden of proof or other constitutional error with the 1999 version of CALJIC No. 2.50.01, which was similar to the 2002 version, but had less cautionary language about the burden of proof. The court noted that the 2002 version was "an improvement." (*Reliford, supra,* at p. 1016.)

Defendant admits he raises this issue solely for federal postconviction review. In light of *Reliford*, we reject this contention.

**4., 5., 6.** Defendant contends his trial counsel was constitutionally ineffective for three reasons: (1) failing to object to physician assistant Luftig's expert opinion that the results of his sexual assault examination of Chanelle were consistent with Chanelle's report of sexual assault; (2) failing to object to evidence regarding rape trauma syndrome; and (3) failing to object to Luftig's testifying about the content of the sexual examination report, prepared by another physician assistant, regarding Minako Doe.

To establish a claim of ineffective counsel, a defendant must show (1) that counsel's performance was deficient; and (2) that the deficient performance was

---

[8] To be precise, we should note that defendant argues the alleged error arose from a combination of three instructions: CALJIC No. 2.50.01, CALJIC No. 2.50.1 [requiring proof of prior sexual offenses by preponderance of the evidence], and CALJIC No. 2.50.2 [defining preponderance of the evidence]. But his real complaint is with CALJIC No. 2.50.01.

15

prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); *People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*).)

To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonable competence. (*Strickland, supra,* 466 U.S. at pp. 687-688; *Anderson, supra,* 25 Cal.4th at p. 569.) When a claim of deficient performance is made on direct appeal, and where the record on appeal does not show the reason for counsel's challenged failures of performance, we must affirm unless "there could be no satisfactory explanation." (*Anderson, supra,* 25 Cal.4th at p. 569; *People v. Pope* (1979) 23 Cal.3d 412, 426 (*Pope*).)

In cases where there might be such a satisfactory explanation (such as trial tactics) which is not revealed by the record, a defendant must raise the claim of ineffective counsel by a habeas corpus proceeding and seek an evidentiary hearing to explore additional facts. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267; *Pope, supra,* 23 Cal.3d at p. 426.)

This case is somewhat unusual, as defendant did file a habeas corpus petition. (*In re Derran Smiley,* A116804.) We denied that petition on February 21, 2007, for failing to state facts sufficient to establish a prima facie claim for relief. But that petition was supported by a declaration of trial counsel, in which she states under penalty of perjury that she did have sound tactical reasons for the three failures to object.

We hereby take judicial notice of our records in the habeas corpus proceeding, including trial counsel's declaration. We reject defendant's claims of ineffective counsel because the declaration shows sound tactical reasons for counsel's failure to object—not ineffective performance.[9]

---

[9] The Attorney General relies on the trial counsel's declaration in his respondent's brief. In his reply brief, defendant responds to that reliance by simply stating that "even tactical decisions of counsel may demonstrate incompetence." In support of this statement defendant cites *People v. Frierson* (1979) 25 Cal.3d 142, 163. His reliance on *Frierson* is misplaced. That case only states that tactical decisions may show incompetence if made without a substantial investigation into the facts of the case. Defendant makes no allegation that his trial counsel's factual inquiry was insufficient.

Even assuming defendant had made a showing on direct appeal of deficient performance of counsel, we would nevertheless affirm the conviction unless the deficient performance has been prejudicial—i.e., that but for counsel's deficient performance it is reasonably probable that the result of the trial would have been different. (*Strickland, supra,* 466 U.S. at p. 694; *Anderson, supra,* 25 Cal.4th at p. 569.) "A reasonable probability is a probability [that is] sufficient to undermine confidence in the outcome." (*Strickland, supra,* at p. 694.)

The defendant must show prejudice by affirmative proof. (*Strickland, supra,* 466 U.S. at p. 693.) If defendant fails to meet his burden of showing prejudice, a reviewing court should reject his claim of ineffective counsel without even reaching the question whether counsel's performance was deficient. (*Id.* at p. 697; *In re Alvernaz* (1992) 2 Cal.4th 924, 945.)

In the present case, on the record before us, we would find a lack of prejudice due to the overwhelming evidence of defendant's guilt.

7. Defendant contends that the trial court erred by giving CALJIC No. 2.62. We disagree.

Defendant took the stand and generally denied the charged offenses, i.e., the aggravated kidnapping and rape of Chanelle. He claimed his sexual intercourse with Chanelle was consensual. On cross-examination, the prosecutor asked him questions regarding the uncharged incident involving Minako Doe. Defendant refused to answer the questions, invoking the Fifth Amendment. But defendant did testify that he did not know Minako, that the DNA found in her vagina could be Terran's, and that he did not know Hakim.

Over defense objection, the trial court gave CALJIC No. 2.62, reasoning that defendant had put his credibility in issue and the Minako incident was directly relevant to defendant's credibility.

The court instructed the jury as follows:

"In this case defendant has testified to certain matters and has refused as to others.

17

"With regard to the alleged incident involving Minako Doe, if you find that the defendant failed to explain or deny any evidence against him introduced by the prosecution which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of this evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable.

"The failure of a defendant to deny or explain evidence against him does not, by itself, warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt.

"If a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain this evidence."

Defendant contends this instruction should not have been given and violated his privilege against self-incrimination. He is incorrect. A defendant who takes the witness stand waives the privilege with regard to matters within the scope of relevant cross-examination. (*People v. Thornton* (1974) 11 Cal.3d 738, 760 (*Thornton*), disapproved on unrelated grounds *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12.) If the defendant makes a general denial of the charged offense or offenses, he thereby places in issue matters such as identity or credibility. (*Thornton, supra,* 11 Cal.3d at p. 760; see *People v. Tealer* (1975) 48 Cal.App.3d 598, 604-605.) Cross-examination regarding uncharged offenses is therefore proper. (*Thornton, supra,* 11 Cal.3d at p. 760.)

We realize CALJIC No. 2.62 should be given sparingly. But in light of defendant's general denial of the charged offenses, and his testimony that he did not know Minako or Hakim, the trial court properly gave CALJIC No. 2.62 and there is no constitutional error. If there were error, it would be manifestly harmless.

**8.** Finally, defendant contends that consecutive sentences on counts 4, 5, and 6 are inappropriate because there is insufficient evidence that he committed those rapes on "separate occasion[s]" within the meaning of section 667.6 (d).

18

Section 667.6(d) mandates full, separate and consecutive sentences when a defendant rapes a victim on separate occasions. Section 667.6(d) further provides:

"In determining whether crimes against a single victim were committed on separate occasions . . . the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his . . . actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his . . . opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

A summary of the judicial interpretation of the statute is found in *People v. Jones* (2001) 25 Cal.4th 98, 104-105. A finding of "separate occasions" does not require a break of any specific duration, a change of location, or a break in defendant's control of the victim. (See *People v. Irvin* (1996) 43 Cal.App.4th 1063, 1071; *People v. Plaza* (1995) 41 Cal.App.4th 377, 385.) But merely changing sexual positions, especially in a manner of seconds, does not by itself support a finding of "separate occasions." (See *People v. Pena* (1992) 7 Cal.App.4th 1294, 1316.)

Defendant contends that the rapes charged as counts 4, 5, and 6 were not committed on "separate occasions." This issue is clouded by defendant's confusion over which conduct constitutes which count of rape. In his opening brief, defendant focuses on the rape incident underlying count 3.

Count 3 occurred after defendant smoked a cigar and spoke to Chanelle in a "rambling" manner for 15 to 20 minutes. Defendant ordered Chanelle to lie on the ground. He began to rape her a second time while she was on her back. She said her leg hurt, so defendant had her turn on her side and place her leg on the play structure. Defendant then penetrated her from behind. She said her leg still hurt, so defendant had her lie on her stomach. He again penetrated her from behind. She again complained about her leg, so defendant turned her over on her back. He raped her again, and ejaculated.

19

Although it involved four penetrations, the prosecutor charged this incident as one rape count. But in his opening brief, defendant designates the second, third, and fourth penetrations as counts 4, 5, and 6. They are not. If they were, defendant might have a point that they did not occur on separate occasions. But perhaps foreseeing this, the prosecutor charged all four penetrations as count 3.

Counts 4, 5, and 6 involve separate and distinct rapes, as the Attorney General points out in his respondent's brief: Count 4 is the rape after defendant said he would rape Chanelle "Again and again and again"; count 5 is the rape that occurred after defendant stopped sexually assaulting Chanelle when she said she was cold, told her to "Suck it up," then placed his coat under her; count 6 is the rape which occurred 30 minutes later.

We have no difficulty in concluding that the jury's findings of "separate occasions" are supported by the evidence. Count 4 occurred 20 minutes after count 3, and after defendant said he would rape Chanelle "Again and again and again." He clearly had a reasonable opportunity to reflect on his actions. The time frame between counts 4 and 5 is much smaller, but defendant had time to listen to Chanelle's complaint about being cold, had time to tell her to "Suck it up," and to place his jacket under her before raping her again. Again, he clearly had a reasonable opportunity to reflect on his actions. And he certainly had such an opportunity in the 30 minutes that transpired between count 5 and count 6.[10]

### III. DISPOSITION

The judgment of conviction is affirmed.

---

[10] We have considered and rejected defendant's arguments in his reply brief based on the correct designation of rape counts. We note that some confusion in this case was caused by Chanelle regarding counts 4 and 5 as a single rape. Thus, she referred to count 6 as the fourth rape, and not the fifth.

_____
Marchiano, P.J.

We concur:

_____
Swager, J.

_____
Margulies, J.

_People v. Smiley, A113874_

21

# Exhibit

TWO

Court of Appeal, First Appellate District, Div. 1 - No. A113874
**S157454**

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

THE PEOPLE, Plaintiff and Respondent,

v.

DERRAN SMILEY, Defendant and Appellant.

---

The petition for review is denied.

**SUPREME COURT
FILED**

NOV **2 8** 2007

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**
_____
Chief Justice

STATE OF CALIFORNIA                                   **COUNTY OF MONTEREY**

(C.C.P. SEC. 466 & 2015.5; 28 U.S.C. SEC 1746)

I. _Derran Smiley_ _____ declare under penalty of perjury that: I am the _Petitioner_ in the above entitled action; I have read the foregoing documents and know the contents thereof and the same is true of my own knowledge, except as to matters stated therein upon information. and belief, and as to those matters, I believe they are true.

Executed this _Sun_ day of _Dec 23_ , 20 _07_ , at Salinas Valley State Prison, Soledad, CA 93960-1050.

(Signature) _Derran Smiley_ _____
DECLARANT/PRISONER

- - - - - - - - - - - - - - - - - - - - - - - -

## <u>PROOF OF SERVICE BY MAIL</u>

I. _Derran Smiley_ _____ , am a resident of California State Prison, I the County of Monterey, State of California; I am over the age of eighteen (18) years and am/am not a party of the above entitled action. My state prison address is: P.O. Box 1050, Soledad, CA 93960-1050.

On _____ , 20 _____ . I served the foregoing: _Writ of Habeas Corpus_
_to the following people as stated down low._
_____
_____

(Set forth exact title of document(s) served)

On the party(s) herein by placing a true copy(s) thereof, enclosed in sealed envelope(s), with postage thereof fully paid, in the United States Mail. in a deposit box so provided at Salinas Valley State Prison. Soledad, CA 93960-1050.

_Attorney General, 455 Golden Gate Ave Suite 11000, San Francisco, CA 94102-7004_
_District Attorney, 900 Courthouse, 1225 Fallon street, Oakland, CA 94612_
_Clerk, Superior Court to honorable Kenneth Kingsbury, 1225 Fallon st, Oakland, CA 94612_
_Clerk, Court of Appeal, Division one 350 McAllister st, San Francisco, CA 94102_
(List parties served)

There is delivery service by United States Mail at the place so addressed. and/or there is regular communication by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _December 23_ , 20 _07_

_Derran Smiley_ _____
DECLARANT/PRISONER

Derran Smiley F-28162
C5/cell 220
Salinas Valley State Prison
P.O Box 1050
Soledad CA, 93960




DEC 2 6 2007

Clerk, of the United States Northern Court
450 Golden Gate Ave, Box 36060
San Francisco, CA 94102

STATE PRISON
_____ MAIL