1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*E-FILED - 9/8/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DERRAN SMILEY,                          )        No. C 08-0045 RMW (PR)
                                        )
                    Petitioner,         )        ORDER DENYING PETITION FOR
                                        )        WRIT OF HABEAS CORPUS
        vs.                             )
                                        )
WARDEN MIKE EVANS,                      )
                                        )
                    Respondent.         )
_____ )

        Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show cause why the petition

should not be granted.  Respondent has filed an answer addressing the merits of the petition and

petitioner filed a traverse.  Having reviewed the briefs and the underlying record, the court

concludes that petitioner is not entitled to relief based on the claims presented and denies the

petition.

**BACKGROUND**

        On December 14, 2004, around 12:45 a.m., Chanelle Doe ("Chanelle") boarded a bus to

go to her cousin's house.  (Resp. Ex. H, (People v. Smiley, California Court of Appeal, First

Appellate District, Case No. A113874, September 19, 2007) at 2.)  Petitioner boarded the bus as

well and sat next to her.  (Id.)  Chanelle knew petitioner and his twin brother as acquaintances

from when she used to work at a shopping mall, but she did not regard them as friends. (Id.)
When Chanelle got off the bus, petitioner followed. (Id.) Petitioner grabbed Chanelle around
her neck and put her in a headlock. (Id.) He dragged her into a park and forced her to the rear of
the park by a play structure where it was dark. (Id. at 2-3.) When Chanelle tried to escape,
petitioner struck and hit her, causing her to twist her ankle and fall. (Id. at 3.) Over the course
of the next three hours, petitioner raped Chanelle at least 5 times. (Id. at 3-4.) Afterward,
petitioner helped Chanelle get to her cousin's house and asked Chanelle for her phone number,
which Chanelle refused. (Id. at 4.)

At trial, petitioner testified on his own behalf. He stated that he and Chanelle had had
sex periodically from 2001 through 2004. (Id. at 9.) Petitioner testified that they had consensual
sex at the park and then Chanelle was upset because she wanted to go to petitioner's motel room
and he declined. (Id.) Petitioner testified that Chanelle was angry and "kind of high." (Id.)
Petitioner testified that he did not hit, choke, or force Chanelle to the ground and that Chanelle
was lying. (Id. at 10.)

After petitioner and Chanelle parted ways, Chanelle's father and another man searched
for petitioner, apprehended him, and called for the police. (Id. at 4.) At the hospital, Chanelle
identified petitioner as the man who raped her. (Id.) A sexual assault expert examined Chanelle
and determined she had injuries consistent with her report of sexual assault. (Id.)

Swabs and blood samples were collected from petitioner for DNA testing. (Id. at 5.) A
comparison of swabs taken from Chanelle during the sexual assault examination revealed the
DNA profile of semen present from Chanelle's vagina to be the same as petitioner's DNA
profile.[1] (Id.) A nonsemen sample from a swab taken from Chanelle showed a mixture of her
DNA profile and petitioner's. (Id.) Semen found on a paper towel at the crime scene and a swab
from petitioner's penis also showed a mixture of petitioner's DNA profile and Chanelle's. (Id.)

At trial, the prosecution introduced evidence of prior uncharged sexual offenses. First,

---

[1] Petitioner's identical twin brother also has the same DNA profile. (Id.)

Minako Doe ("Minako") testified that in June 2001, she was walking home from the BART station where she came upon a man named Hakim, and his cousin, who was introduced as petitioner, Derran. (Id. at 5.) Minako agreed to follow the two men into a park where the three of them drank beer. (Id. at 6.) Minako got up to use the restroom and petitioner followed her. (Id.) Soon after, petitioner grabbed Minako and began punching her in the face. (Id.) Petitioner raped her, punched her, kicked her, and then ran away. (Id.) That same day, Minako had a sexual assault examination in which the DNA profile of semen found in her vagina was entered into the database. (Id.) That profile matched petitioner's DNA profile. (Id.) Bottles found at the crime scene revealed four of petitioner's fingerprints. (Id. at 7.)

Second, Michelea Doe ("Michelea") testified that she was an 8-year old girl when petitioner and his twin brother lived upstairs from her. (Id.) Over the course of a month, petitioner raped her and forced her to orally copulate him at her house, and sodomized her in a park. (Id.) Petitioner denied these allegations and testified that he accepted blame for the accusations at the time to aid his brother, who was also charged with the crimes at the time, and who later admitted to committing sexual acts against another young girl. (Id.)

The jury convicted petitioner of kidnapping to commit rape and five counts of forcible rape. (Id. at 10.) The jury also found true special allegations. (Id.) The court sentenced petitioner to an indeterminate term of 25 years to life on the first forcible rape count, stayed a sentence of life in prison on the aggravated kidnapping count, and gave petitioner a consecutive determinate term of six years on the remaining counts, totaling a consecutive determinate term of 24 years. (Id.) On direct appeal, the state appellate court affirmed petitioner's conviction and sentence on September 19, 2007. (Resp. Ex. H.) The state supreme court denied a petition for review on November 29, 2007. (Resp. Ex. J.) A petition for writ of certiorari was denied on March 17, 2008. (Resp. Ex. L.) The instant petition was filed on January 4, 2008.

## DISCUSSION

### A. Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in

1  custody pursuant to the judgment of a state court only on the ground that he is in custody in

2  violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

3  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court

4  may not grant a petition challenging a state conviction or sentence on the basis of a claim that

5  was reviewed on the merits in state court unless the state court's adjudication of the claim

6  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

7  clearly established federal law, as determined by the Supreme Court of the United States; or (2)

8  resulted in a decision that was based on an unreasonable determination of the facts in light of the

9  evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The first prong applies

10  both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S.

11  362, 384-86 (2000), while the second prong applies to decisions based on factual determinations,

12  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

13  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

14  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

15  law or if the state court decides a case differently than [the] Court has on a set of materially

16  indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an

17  "unreasonable application of" Supreme Court authority, falling under the second clause of

18  § 2254(d)(1), if the state court correctly identifies the governing legal principle from the

19  Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's

20  case." Id. at 413. The federal court on habeas review may not issue the writ "simply because

21  that court concludes in its independent judgment that the relevant state-court decision applied

22  clearly established federal law erroneously or incorrectly." Id. at 411.

23  Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

24  will not be overturned on factual grounds unless objectively unreasonable in light of the

25  evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340. The court must

26  presume correct any determination of a factual issue made by a state court unless the petitioner

27  rebuts the presumption of correctness by clear and convincing evidence. See 28 U.S.C.

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd

1   § 2254(e)(1).

2   In determining whether the state court's decision is contrary to, or involved an

3   unreasonable application of, clearly established federal law, a federal court looks to the decision

4   of the highest state court to address the merits of a petitioner's claim in a reasoned decision.

5   LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

6   **B.   Petitioner's Claims**

7        1.   Insufficient evidence

8   Petitioner claims that his kidnapping for rape conviction and kidnapping enhancements

9   cannot stand because there was insufficient evidence to show "movement of the victim . . .

10  beyond that merely incidental to the commission of, and increases the risk of harm to the victim

11  over and above that necessarily present in, the intended underlying offense."  Cal. Penal Code

12  §§ 209(b), 667.61((d)(2).  Specifically, he alleges that because there was no use of a weapon and

13  no evidence that he moved Chanelle from the public view to a non-public view, the movement

14  was merely incidental and did not increase the risk of harm to the victim.

15  A federal court reviewing collaterally a state court conviction does not determine whether

16  it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982

17  F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the

18  evidence in the light most favorable to the prosecution, any rational trier of fact could have

19  found the essential elements of the crime beyond a reasonable doubt.'"  See id. (quoting Jackson

20  v. Virginia, 443 U.S. 307, 319 (1979)).  Only if no rational trier of fact could have found proof of

21  guilt beyond a reasonable doubt, may the writ be granted.  See Jackson, 443 U.S. at 324.

22  On habeas review, a federal court evaluating the evidence under In re Winship, 397 U.S.

23  358 (1970), and Jackson v. Virginia should take into consideration all of the evidence presented

24  at trial.  LaMere v. Slaughter, 458 F.3d 878, 882 (9th Cir. 2006).  If confronted by a record that

25  supports conflicting inferences, a federal habeas court "must presume – even if it does not

26  affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of

27  the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd

1    In light of 28 U.S.C. § 2254(d), a federal habeas court applies the standard of <u>Jackson</u>

2    with an additional layer of deference.  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005).  A

3    federal habeas court must ask whether the operative state court decision reflected an

4    unreasonable application of <u>Jackson</u> to the facts of the case.  <u>Id.</u> at 1275.  A writ may be granted

5    only if the state court's application of the <u>Jackson</u> standard was "'objectively unreasonable.'"

6    <u>Id.</u> at 1275 n.13.

7    The California Court of Appeal rejected this claim.

> "[W]hether the victim's forced movement was merely incidental to the rape is
> necessarily connected to whether it substantially increased the risk to the
> victim." <u>People v. Dominguez</u>, 39 Cal. 4th 1141, 1152 (2006).  "The essence
> of aggravated kidnapping is the increase in the risk of harm to the victim
> caused by the forced movement. [Citation.]" <u>Ibid.</u>  The distance the defendant
> moved the victim si only one factor for the jury to consider.  The jury must
> consider the distance "in context, including the nature of the crime and its
> environment." <u>Ibid.</u>  The jury must view the movement in the context of
> whether it decreased the likelihood of detection, made it more difficult for the
> victim to escape, or made it more possible for the defendant to commit
> additional offenses.  <u>Ibid.</u>  Furthermore, there is no minimum number of feet a
> defendant must move the victim to be guilty of aggravated kidnapping.
> <u>People v. Martinez</u>, 20 Cal. 4th 225, 233 (1999); <u>People v. Shadden</u>, 93 Cal.
> App. 4th 164, 168 (1999) (nine feet sufficient).
>
> Movement is more than merely incidental, and thus sufficient for aggravated
> kidnapping, if the movement increases the harm to the victim by relocating
> her from a public place to a private one.  In <u>Shadden</u>, the defendant moved the
> victim from the front of a store to the rear room.  <u>Shadden</u>, <u>supra</u>, 93 Cal.
> App. 4th at pp. 168-169.  In <u>People v. Diaz</u>, 78 Cal. App. 4th, 248-249 (2000),
> the defendant moved the victim from a public sidewalk into a darkened park.
>
> Here, the defendant moved Chanelle 222 feet from where he initially accosted
> her to the entrance of the park, and then another 330 feet to the rear of the
> park.  It was dark and there were trees and ivy-covered fences that blocked the
> view of the rape scene from adjacent houses.  The movement was more than
> substantial and the movement of several hundred feet to the rear of a darkened
> park clearly decreased the chance of detection and diminished the chance of
> Chanelle escaping to the street.  The above cases, especially <u>Diaz</u>, control and
> support our conclusion that the evidence is sufficient for aggravated
> kidnapping." (Resp. Ex. H, p. 11-12.)

24    Sufficiency claims are judged by looking at the elements of the crime under state law.

25    <u>Jackson</u>, 443 U.S. at 324, n.16.  In California, "whether the movement is merely incidental to the

26    crime . . . , the jury considers the 'scope and nature' of the movement," <u>People v. Daniels</u>, 71

27    Cal. 2d 1119, 1131 (1969), as well as the "context of the environment in which the movement

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd

1   occurred," People v. Rayford, 9 Cal. 4th 1, 12 (1994) (internal citations omitted).  Additionally,

2   the related inquiry of whether the movement "substantially increased the risk to the victim"

3   considers such factors as "the decreased likelihood of detection, the danger inherent in a victim's

4   foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional

5   crimes."  Id. at 22.

6       Viewing the evidence in the light most favorable to the prosecution, see Jackson, 443

7   U.S. at 319, the evidence revealed that after walking a few blocks from the bus stop, petitioner

8   grabbed Chanelle from the public sidewalk, dragged her 222 feet to a park, and then an

9   additional 330 feet to the back of the park where, as the California Court of Appeal noted, it was

10  dark and the view of the crime scene was blocked by trees and ivy-covered fences.  Here,

11  contrary to petitioner's assertion, the forced movement from a public sidewalk to a nearby park

12  is not necessarily incidental to a commission of rape.  (Traverse, p. 7.)  Rape "does not

13  necessarily require movement to complete the crime."  People v. Salazar, 33 Cal. App. 4th 341,

14  347 and n.8 (1995) (concluding that moving victim from walkway outside motel into motel

15  bathroom to commit rape could have been incidental to defendant's *plan* for rape, but was not

16  incidental to the *actual commission* of the crime) (emphasis added).  Further, movement to the

17  rear of the park subjected Chanelle to an increase in the risk of harm because it decreased

18  petitioner's chances of detection, lessened the likelihood of Chanelle's escaping,[2] and gave

19  petitioner the enhanced opportunity to rape her multiple times.  See id. at 348.  In light of these

20  facts, the jury could have reasonably concluded that the forcible movement of Chanelle was not

21  merely incidental to the commission of rape and did increase the risk of harm over and above

22  that present to commit the crime.

23      Accordingly, the state court's rejection of petitioner's claim of insufficient evidence was

24  not contrary to, or an unreasonable application of, Supreme Court authority.  28 U.S.C.

25  § 2254(d)(1).

26  _____

27      [2] In fact, Chanelle did try to escape but petitioner prevented her from doing so by
    striking her in the back which caused her to twist her ankle and fall.  (Resp. Ex. H, p. 3.)

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd

1      2.      California Evidence Code § 1108 -- Propensity evidence[3]

2          Petitioner claims that he was denied due process and a fair trial when the court admitted

3      evidence of uncharged prior sexual offenses against Minako and Michelea, under California

4      Evidence Code § 1108 (Claim #2).  Petitioner further asserts that section 1108 is unconstitutional

5      as applied and on its face (Claim #6).[4]

6          The due process inquiry in federal habeas review is whether the admission of evidence

7      was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  See Walters v.

8      Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  But only if there are no permissible inferences that

9      the jury may draw from the evidence can its admission violate due process.  See Jammal v. Van

10     de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

11         California Evidence Code § 1108(a) provides:  In a criminal action in which the

12     defendant is accused of a sexual offense, evidence of the defendant's commission of another

13     sexual offense or offenses is not made inadmissible by Section 1101[5], if the evidence is not

14

15         [3] Because of the similarity between Claim #2 and Claim #6 in petitioner's petition, the
16     court addresses both claims in this subsection.

17         [4] The court exercises its discretion and declines to consider petitioner's assertion that
18     California Evidence Code § 1108 violates the Equal Protection Clause.  (Traverse, p. 10.)  See
       Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A traverse is not the proper
19     pleading to raise additional grounds.").  Nevertheless, even if petitioner had properly raised it in
       his petition, his equal protection challenge is without merit because he has not shown that he is a
20     member of a suspect class or that the challenged provision burdens a fundamental right.  Cf.
       United States v. LeMay, 260 F.3d 1018, 1030-31 (9th Cir. 2001).

21
       [5] "(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109,
22     evidence of a person's character or a trait of his or her character (whether in the form of an
       opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is
23     inadmissible when offered to prove his or her conduct on a specified occasion.

24
           (b) Nothing in this section prohibits the admission of evidence that a person
25     committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive,
       opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or
26     whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act
       did not reasonably and in good faith believe that the victim consented) other than his or her
27     disposition to commit such an act.

28
       Order Denying Petition for Writ of Habeas Corpus
       P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd

1   inadmissible pursuant to Section 352[6].

2       The state appellate court relied on the California Supreme Court's rejection of the notion

3   that section 1108 is unconstitutional because it violates due process.  See People v. Falsetta, 21

4   Cal. 4th 903, 912-22 (1999).  (Resp. Ex. H, p. 12-13.)  The appellate court also agreed with two

5   California appellate courts that have rejected the claim that section 1108 violates equal

6   protection.  (Id. at 13.)  Nevertheless, the court went on to discuss whether the evidence was

7   more probative than prejudicial.  It concluded that the section 1108 evidence was not prejudicial

8   and even if it were, any error was harmless.  (Id. at 13-14.)

9       While no federal court has specifically ruled on the constitutionality of section 1108,

10  several circuit courts including the Ninth Circuit have upheld the use of propensity evidence

11  under Rules 413 and 414 of the Federal Rules of Evidence.  See United States v. LeMay, 260

12  F.3d 1018, 1024-25 (9th Cir. 2001); United States v. Castillo, 140 F.3d 874, 881 (10th Cir.

13  1998); United States v. Mound, 149 F.3d 799, 801 (8th Cir. 1998).

14      The court held in LeMay that Rule 414 is not unconstitutional because it is limited in its

15  function by Rule 403.  LeMay, 260 F.3d at 1026-27.  Rule 403 directs judges to exclude any

16  evidence submitted under Rule 414 that is more prejudicial than probative.  Id. at 1027.  The

17  court reasoned that this balancing process eliminates any due process concerns from Rule 414,

18  stating, "As long as the protections of Rule 403 remain in place to ensure that potentially

19  devastating evidence of little probative value will not reach the jury, the right to a fair trial

20  remains adequately safeguarded."  Id. at 1026.

21      The reasoning of LeMay applies equally to this case because the California rules are

22  analogous to the federal rules.  Evidence that is admissible under section 1108 is limited by

23  _____

24      (c) Nothing in this section affects the admissibility of evidence offered to support or
    attack the credibility of a witness."  Id. at § 1101.

25

26      [6] "The court in its discretion may exclude evidence if its probative value is substantially
    outweighed by the probability that its admission will (a) necessitate undue consumption of time
27  or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the
    jury."  Id. at § 352.

28

    Order Denying Petition for Writ of Habeas Corpus
    P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd

1    section 352.  See Cal. Evid. Code § 1108(a).  Section 352 parallels Rule 403 of the Federal Rules

2    of Evidence because it permits a trial judge to exclude evidence when its probative value is

3    substantially outweighed by its prejudicial effect.  See id. § 352.  As the California Supreme

4    Court held in Falsetta, the requirement under section 352 to balance the prejudicial effect of the

5    evidence against its probative value ensures that evidence admitted under section 1108 will not

6    infringe on the right to a fair trial guaranteed under the Due Process Clause.  21 Cal. 4th at 913.

7        Moreover, the United States Supreme Court has never held that the admission of

8    evidence of prior crimes violates the right to due process.  See Estelle v. McGuire, 502 U.S. 62,

9    75 & n.5 (1991) (declining to rule on the constitutionality of propensity evidence); Alberni v.

10   McDaniel, 458 F.3d 860, 864-67 (9th Cir. 2006).  Because habeas relief may not be granted

11   unless the state court decision was contrary to, or an unreasonable application of, clearly

12   established federal law as determined by the Supreme Court, see 28 U.S.C. § 2254, and there is

13   no Supreme Court precedent that admission of propensity evidence violates due process, the

14   decision of the appellate court cannot be said to have contradicted or unreasonably applied

15   clearly established federal law in upholding the constitutionality of section 1108.  See Alberni,

16   458 F.3d at 866-67 (under AEDPA, habeas relief cannot be granted on claim Supreme Court has

17   reserved).

18       Accordingly, the state court's rejection of petitioner's claim of improper admission of

19   photographs was not contrary to, or an unreasonable application of, Supreme Court authority,

20   nor was it based upon an unreasonable application of the facts in light of the evidence presented.

21   28 U.S.C. § 2254 (d)(1), (2).

22       3.    California Jury Instruction No. 2.62

23       Petitioner claims that California Jury Instruction ("CALJIC") No. 2.62 violated his right

24   against self-incrimination because it allowed the jury to draw an unfavorable inference when he

25   failed to explain or deny inculpatory evidence.  Specifically, petitioner alleges that the

26   instruction allowed the jury to incriminate him based on his refusal to answer the prosecution's

27   questions on cross-examination regarding Minako.  Relatedly, petitioner appears to suggest

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd

1    because he did not talk about Minako on direct examination, the prosecutor should have been

2    prohibited from asking questions about her during cross examination.

3           To obtain federal collateral relief for errors in the jury charge, a petitioner must show that

4    the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

5    process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The instruction may not be judged in

6    artificial isolation, but must be considered in the context of the instructions as a whole and the

7    trial record.  See id.  In reviewing a faulty instruction, the court inquires whether there is a

8    "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates

9    the Constitution.  Id. at 72, n.4.  If an error is found, the court must also determine that the error

10   had a "substantial and injurious effect or influence in determining the jury's verdict" before

11   granting relief in habeas proceedings.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

12          Here, the trial court instructed the jury as follows:

13              "In this case the defendant has testified to certain matters and has refused as to
                others.

14
15              With regard to the alleged incident involving Minako Doe, if you find that the
                defendant failed to explain or deny any evidence against him introduced by the
16              prosecution which he reasonably can be expected to deny or explain
                because of facts within his knowledge, you may take that failure into
17              consideration as tending to indicate the truth of this evidence and as indicating
                that among the inferences that may reasonably be drawn therefrom, those
                unfavorable to the defendant are more probable.
18
19              The failure of a defendant to deny or explain evidence against him does not by
                itself warrant an inference of guilt, nor does it relieve the prosecution of its
20              burden of proving every essential element of the crime and the guilt of the
                defendant beyond a reasonable doubt.
21
                If a defendant does not have the knowledge that he would need to deny or to
22              explain evidence against him, it would be unreasonable to draw an inference
                unfavorable to him because of his failure to deny or explain this evidence.
23              (RT 1462.)

24          The state appellate court denied petitioner's claim.

25              "Defendant contends this instruction should not have been given and violated
                his privilege against self-incrimination.  He is incorrect.  A defendant who
26              takes the witness stand waives the privilege with regard to matters within the
                scope of relevant cross-examination.  People v. Thornton, 11 Cal. 3d 738, 760
27              (1974), disapproved on unrelated grounds [by] People v. Flannel, 25 Cal. 3d
                668, 684 n.12 (1979).  If the defendant makes a general denial of the charged

28

offense or offenses, he thereby places in issue matters such as identity or credibility. Thornton, supra, 11 Cal. 3d at p. 760; see People v. Tealer, 48 Cal. App. 3d 598, 604-605 (1975). Cross-examination regarding uncharged offenses is therefore proper. Thornton, supra, 11 Cal. 3d at p. 760.

We realize CALJIC No. 2.62 should be given sparingly. But in light of defendant's general denial of the charged offenses, and his testimony that he did not know Minako or Hakim, the trial court properly gave CALJIC No. 2.62 and there is no constitutional error. If there were error, it would be manifestly harmless. (Resp. Ex. H, p. 18.)

To the extent petitioner claims he had a Fifth Amendment privilege not to answer questions on cross-examination about Minako, petitioner waived any such privilege when he testified. A defendant who testifies on his own behalf waives his Fifth Amendment privilege against self-incrimination at least to the extent of the scope of relevant cross-examination. Johnson v. United States, 318 U.S. 189, 195 (1943); Caminetti v. United States, 242 U.S. 470, 494 (1917).

Here, questions about Minako fell within the scope of relevant cross-examination. By testifying, petitioner placed his credibility at issue, and because petitioner testified that Chanelle had consented to having sex with him, petitioner made the issue of consent relevant. Moreover, under California Evidence Code § 1108, petitioner's prior sex offenses were relevant to prove he had a propensity to commit rape and other sex offenses, and that he acted in conformity with such character trait in committing the charged offenses.

The trial court's instructing the jury, pursuant to CALJIC No. 2.62, that it could draw adverse inferences from petitioner's refusal to answer the prosecutor's questions likewise did not violate petitioner's Fifth Amendment rights. Petitioner has not pointed to any United States Supreme Court case holding that a jury should not be allowed to draw an unfavorable inference from a testifying defendant's failure to explain or refute evidence when he can be reasonably expected to do so.[7] Further, it is generally accepted that a testifying defendant may have his

---

[7] The Supreme Court cases upon which petitioner relies for the proposition that juries may not be told that it is permissible to draw adverse inferences from a defendant's silence involve non-testifying defendants and thus are inapposite. See, e.g., Chapman v. California, 386 U.S. 18, 25-26 (1967); Griffin v. California, 380 U.S. 609, 614 (1965).

story tested by cross-examination and subjected to adverse inferences.  An accused who takes the stand "may not stop short in his testimony by omitting and failing to explain incriminating circumstances and events already in evidence in which he participated and concerning which he is fully informed, without subjecting his silence to the inferences to be naturally drawn from it." Caminetti, 242 U.S. at 494.  In Caminetti, the Court found acceptable a jury instruction which, like the one here, allowed the jury to consider the testifying defendant's failure to deny or explain acts of an incriminating nature that the evidence of the prosecution tended to establish against him.  Id. at 493.  As in the present case, the Caminetti defendant was not put to the task of explaining every inculpatory fact shown by the prosecution and the inference only was permitted to be drawn from the defendant's failure to meet evidence as to matters within his own knowledge.  See id. at 495.

The giving of CALJIC No. 2.62 did not so infect the entire trial as to result in a due process violation.  Contrary to petitioner's suggestion, the instruction did not tell the jury that it was required to, or should draw an adverse inference, thereby invading the province of the jury. Instead, the instruction merely pointed out that the jury could draw an adverse inference.  Nor did the instruction alter the burden of proof or relieve the prosecution of its burden.  Instead, the instruction explicitly stated that the failure to explain or deny the evidence did not "relieve the prosecution of its burden of proving every essential element of the crime and the guilty of the defendant beyond a reasonable doubt."  When taken as a whole, CALJIC No. 2.62 clearly preserved the government's responsibility to prove the elements of its case, and did not require petitioner to explain the evidence against him.

Even assuming that the instruction was erroneous, petitioner would not prevail because the record does not demonstrate that giving CALJIC No. 2.62 "had substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637.  Petitioner refused to answer some questions about Minako, but responded to others.  For example, he denied knowing her (RT 1389), suggested that the DNA found in her vagina could have belonged to his twin brother (RT 1388), and denied that he knew Hakim (RT 1389-90).  As the

1  Court suggested in <u>Caminetti</u>, this kind of instruction reflects reality, i.e., it covers the

2  "inferences to be naturally drawn" from the absence of an explanation under the circumstances.

3  <u>Caminetti</u>, 242 U.S. at 494.  With or without the instruction, the jury would have viewed

4  negatively petitioner's failure to offer a plausible explanation of how his fingerprints were found

5  at the scene where Minako testified she was raped by petitioner (RT 1388) or how Minako

6  testified about a similar "choke hold" as described by Chanelle (RT 1388).

7        Neither the Due Process Clause nor the Fifth Amendment was offended by giving the

8  CALJIC No. 2.62 instruction.  Accordingly, the court concludes that the state court's decision

9  rejecting this claim was not contrary to, or an unreasonable application of clearly established

10  federal law, nor was it an unreasonable determination of the facts in light of the evidence

11  presented.  28 U.S.C. § 2254(d)(1), (2).

12        4.    <u>CALJIC No. 2.50.01</u>

13        Petitioner claims that CALJIC No. 2.50.01 (2002) violated his right to due process

14  because it allowed the jury to infer that because petitioner committed prior crimes, he committed

15  the charged crimes.  Specifically, petitioner argues that the instructions lowered the

16  prosecution's burden of proof.

17        The relevant portion of the 2002 version of CALJIC 2.50.01 states:

18        If you find that the defendant committed a prior sexual offense, you may, but
       are not required to, infer that the defendant had a disposition to commit sexual
19        offenses.  If you find that the defendant had this disposition, you may, but are
       not required to, infer that he was likely to commit and did commit the sexual
20        offense or offenses of which he is accused.

21        However, if you find by a preponderance of the evidence that the defendant
       committed a prior sexual offense or offenses, that is not sufficient by itself to
22        prove beyond a reasonable doubt that he committed the charged crimes.  If
       you determine an inference properly can be drawn from this evidence, this
23        inference is simply one item for you to consider along with all the other
       evidence in determining whether the defendant has been proved guilty beyond
24        a reasonable doubt of the charged crimes.
       (RT 1456.)
25
     The California Court of Appeal rejected this claim.
26
        Our Supreme Court considered and rejected a similar argument in <u>People v.</u>
27        <u>Reliford</u>, 29 Cal. 4th 1007, 1012-1014, 1016 (2003).  The court found no

28

confusion regarding burden of proof or other constitutional error with the 1999 version of CALJIC No. 2.50.01, which was similar to the 2002 version, but had less cautionary language about the burden of proof.  The court noted that the 2002 version was "an improvement."  Reliford, supra, at p. 1016. (Resp. Ex. H, p. 15.)

CALJIC No. 2.50.01 explicitly instructed the jury that "if you find by a preponderance of the evidence that the defendant committed a prior sexual offense or offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes." (RT 1456.) The jury was also instructed, "If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider along with all the other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crimes."[8] (Id.)  Given such specific mandates, it is not reasonably likely that the jury might believe it could convict on merely a preponderance standard.

Moreover, the other jury instructions bolster this conclusion.  The trial court also instructed the jury with CALJIC No. 2.90 that the prosecution had "the burden of proving [Petitioner] guilty beyond a reasonable doubt," and with CALJIC No. 2.01, which provides that "each fact which is essential to complete a set of circumstances necessary to establish the

---

[8]  This language from the 2002 revised instructions distinguishes this case from Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004), in which the Ninth Circuit held that a petitioner's due process rights were violated when the trial court gave the 1996 version of the 2.50.01 instruction. Id. at 814. The 1996 version of 2.50.01 allowed a jury to consider evidence of prior uncharged sex offenses and to infer the defendant's guilt of the current offense from the prior uncharged offences. Id. at 817-18.  As the 1996 version of CALJIC No. 2.50.1 required only a preponderance of the evidence to prove the uncharged offenses, CALJIC Nos. 2.50.1 and 2.50.01 together allowed a jury to find a defendant guilty without requiring proof beyond a reasonable doubt. Id. at 822.  The heart of the Gibson decision is the court's conclusion that the pre-revision instructions given in that case provided "two routes of conviction, one by a constitutionally sufficient standard and one by a constitutionally deficient one."  Id. at 823. When it is impossible to know whether a jury used the impermissible legal theory or the one which meets constitutional requirements, the unconstitutionality of one of the routes requires that the conviction be set aside. Id. at 825.  In the 2002 revised version of the instruction, however, the constitutionally-deficient route was blocked off:  The revised instruction tells the jury in unequivocal words that it cannot find petitioner guilty beyond a reasonable doubt just because it had found by a preponderance of the evidence that he committed prior bad acts. Indeed, Gibson suggested that the 1999 revised instruction, which did not include the last cautionary sentence in the 2002 version, would pass constitutional muster. 387 F.3d at 818-19.

1  defendant's guilt must be proved beyond a reasonable doubt.  In other words, before an inference

2  essential to establish guilt may be found to have been proved beyond a reasonable doubt, each

3  fact or circumstance upon which such inference necessarily rests must be proved beyond a

4  reasonable doubt." (CT 340, 368).  Given that juries are presumed to follow their instructions,

5  Weeks v. Angelone, 528 U.S. 225, 234 (2000), there is no reasonable likelihood that the jury, in

6  considering the instructions as a whole, erroneously applied CALJIC No. 2.50.01 in a way that

7  violates the Constitution.

8      Accordingly, the court concludes that the state court's decision rejecting this claim was

9  not contrary to, or an unreasonable application of clearly established federal law, nor was it an

10 unreasonable determination of the facts in light of the evidence presented.  28 U.S.C.

11 § 2254(d)(1), (2).

12      5.    Ineffective assistance of trial counsel

13     Petitioner claims that he received ineffective assistance of counsel because counsel failed

14 to object to expert testimony regarding rape trauma syndrome.  Petitioner asserts that such

15 testimony was used as substantive evidence of petitioner's guilt.  Specifically, petitioner argues

16 that counsel should have objected because the prosecution improperly asked hypothetical

17 questions which mirrored the alleged facts in the case, and thus, were improperly tailored to

18 prove that petitioner committed the rape.

19     A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

20 Amendment right to counsel, which guarantees not only assistance, but effective assistance of

21 counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any

22 claim of ineffectiveness must be whether counsel's conduct so undermined the proper

23 functioning of the adversarial process that the trial cannot be relied upon as having produced a

24 just result.  Id.

25     In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner

26 must establish two things.  First, he must establish that counsel's performance was deficient, i.e.,

27 that it fell below an "objective standard of reasonableness" under prevailing professional norms.

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd
16

1    Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient

2    performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional

3    errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable

4    probability is a probability sufficient to undermine confidence in the outcome.  Id.

5         The California Court of Appeal rejected this claim.  (Resp. Ex. H, p. 16-17.)  It noted that

6    trial counsel submitted a declaration, in which she stated under penalty of perjury that her

7    decision not to object to the evidence of rape trauma syndrome was made as a tactical choice.

8    (Id. at 16.)  Relying on that declaration, the California court determined that counsel was not

9    deficient.  (Id.)  Alternatively, the California court concluded that even if counsel was deficient,

10   petitioner could show no prejudice "due to the overwhelming evidence of [petitioner's] guilt."

11   (Id. at 17.)

12        Here, trial counsel's declaration stated, "I did not object to the use of the rape trauma

13   syndrome evidence as objecting would have only drawn more attention to the testimony.  The

14   Rape Trauma expert, is widely known to be pro-prosecution.  It was a strategic decision to

15   minimize the testimony of an expert who had not examined either of the rape victims and who

16   was offering only generalized testimony about rape.  My strategy was to minimize any

17   deleterious effect.  It was not beyond the scope of the expert's testimony to render an opinion on

18   a hypothetical with facts that were close to the case."  (Resp. Ex. G.)

19        Counsel's decision not object to expert testimony was a trial tactic decision by counsel.

20   A difference of opinion as to trial tactics does not constitute a denial of effective assistance.

21   United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981).  Tactical decisions deserve deference

22   when: 1) counsel in fact bases trial conduct on strategic considerations; 2) counsel makes an

23   informed decision based upon investigation; and 3) the decision appears to be reasonable under

24   the circumstances.  Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).  Here, counsel based

25   her decision on strategic considerations.  She did not want to object to the testimony because she

26   did not want to call attention to it.  Counsel was aware that the expert frequently sided with the

27   prosecution, and she felt that by remaining silent during the expert's testimony, she could

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd

1  attempt to minimize its effect.  Counsel made an informed decision; she states in her declaration

2  that she also knew that the testimony was proper under state law.  (Resp. Ex. G.)  Under these

3  circumstances, counsel's failure to object to the expert's testimony was reasonable, and did not

4  deprive petitioner of ineffective assistance.

5       In addition, petitioner fails to demonstrate prejudice.  Although petitioner asserts that it

6  was improper for the expert to testify as to her opinion on hypotheticals that mirrored the factual

7  allegations at trial, California law permits hypothetical scenarios that are "rooted in facts shown

8  by the evidence."  People v. Gardeley, 14 Cal. 4th 605, 618 (1996).  A review of the testimony

9  reveals that while the prosecution did ask hypothetical questions with extremely similar factual

10  scenarios, the expert was asked only her opinion on whether she believed the hypothetical

11  victim's behavior was consistent with the expert's experience in the areas of sexual assault and

12  rape trauma syndrome.  Such testimony is permissible.  See id.; cf. People v. Bledsoe, 36 Cal. 3d

13  236, 251 (1984) (concluding that testimony regarding rape trauma syndrome can be used to rebut

14  misconceptions about presumed behavior of rape victims, but not to prove that a rape occurred).

15       Further, the court instructed the jury with CALJIC No. 10.64.[9]  That instruction explicitly

16  limited the jury's ability to consider the expert's testimony.  Presuming the jurors follow their

17  instructions, Weeks, 528 U.S. at 234, they could not consider that testimony as proof of

18  petitioner's guilt.  As such, counsel's failure to not object to the testimony could not have been

19

20       [9]  CALJIC No. 10.64 provides, "Evidence has been presented to you concerning rape-

21  trauma syndrome.  This evidence is not received and must not be considered by you as proof that
   the alleged victim's rape claims are true.

22

23  Rape trauma syndrome research is based upon an approach that is completely different from that

24  which you must take to this case.  The syndrome research begins with the assumption that a rape
   has occurred, and seeks to describe and explain common reactions of females to that experience.

25  As distinguished from that research approach, you are to presume the defendant innocent.  The
   People have the burden of proving guilty beyond a reasonable doubt.

26  You should consider the evidence concerning the syndrome and its effect only for the limited

27  purpose of showing, if it does, that the alleged victim's reactions, as demonstrated by the
   evidence, are not inconsistent with her having been raped."  (CT 383.)

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd

1    prejudicial.

2           Accordingly, the court concludes that the state court's decision rejecting this claim was

3    not contrary to, or an unreasonable application of clearly established federal law, nor was it an

4    unreasonable determination of the facts in light of the evidence presented.  28 U.S.C.

5    § 2254(d)(1), (2).

6                                         **CONCLUSION**

7           For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The Clerk

8    shall enter judgment for respondent and close the file.

9           IT IS SO ORDERED.

10   Dated:  _____9/4/09_____

11                                         RONALD M. WHYTE
                                           United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smiley045denyhc.wpd